STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0986

STATE OF LOUISIANA, BY AND THROUGH ITS
ATTORNEY GENERAL JEFF LANDRY

VERSUS

ASTRAZENECA AB, ASTRAZENECA LP, ASTRAZENECA
PHARMACEUTICALS LP, AND AKTIBOLAGET HÄSSLE

**Judgment Rendered:** 'JUL 0 2 2020

\* \* \* \* \* \*

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit Number C637960

Honorable Timothy E. Kelly, Presiding

\* \* \* \* \* \*

<table>
<tr><td>Jeff Landry<br>Attorney General<br>Elizabeth B. Murrill<br>Nicholas J. Diez<br>Baton Rouge, LA<br><br>Jerald P. Block<br>Thibodaux, LA<br><br>Alejandro Perkins<br>Baton Rouge, LA<br><br>Robert L. Salim<br>Barrett Beasley<br>Natchitoches, LA<br><br>John Alden Meade<br>Adam G. Young<br>New Orleans, LA<br><br>Patrick C. Morrow<br>James P. Ryan<br>Opelousas, LA</td><td>Counsel for Plaintiff/Appellant<br>State of Louisiana, by and through<br>its Attorney General Jeff Landry</td></tr>
</table>

Bradley C. Myers
Linda R. Rodrigue
Amanda M. Collura-Day
Baton Rouge, LA

Michael P. Kelly
Daniel M. Silver
Daniel J. Brown
Wilmington, DE

Counsel for Defendants/Appellees
AstraZeneca AB, AstraZeneca LP,
AstraZeneca Pharmaceuticals LP, and
Aktibolaget Hässle

\* \* \* \* \* \*

BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.

---

[1] Judge William J. Burris, retired, serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**GUIDRY, J.**

Plaintiff, the State of Louisiana, by and through its Attorney General, Jeff Landry, appeals from a trial court judgment granting summary judgment in favor of defendants, AstraZeneca AB, AstraZeneca LP, AstraZeneca Pharmaceuticals LP, and Aktibolaget Hässle,[2] and dismissing the State's claims against them with prejudice. For the reasons that follow, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

### Average Wholesale Price Litigation

On November 3, 2010, the State, by and through its Attorney General, James D. "Buddy" Caldwell[3], filed suit against multiple pharmaceutical companies, including AstraZeneca LP and AstraZeneca Pharmaceuticals LP, alleging that these defendant pharmaceutical companies had engaged in false, misleading, wanton, unfair, and deceptive acts and practices in the pricing and marketing of their prescriptive drug products. State v. Abbott Laboratories, Inc., Suit Number 596164, 19th Judicial District Court (Average Wholesale Price "AWP" Litigation). The State further alleged that the defendants' fraudulent pricing and marketing of their prescription drugs impacted elderly, disabled, and poor Louisiana citizens covered by the State's Medicaid program by causing the State's Medicaid agency to pay grossly excessive prices for the defendants' prescription drugs.

According to the State's petition, reimbursement for pharmacy-dispensed prescription drugs under the Louisiana Medicaid program is based on information supplied by defendants to industry reporting services. This information includes the following prices indices: (1) wholesale acquisition cost (WAC); (2) average wholesale price (AWP); and (3) direct price. The State alleged that from 1991-

---

[2] We note that the spelling of defendant, Aktibolaget Hässle, varies throughout the record. However, for consistency, we will spell the name of defendant in this opinion as it appears in the caption of this proceeding and in the judgment at issue.

[3] In January 2016, Jeff Landry succeeded Attorney General James D. "Buddy" Caldwell.

2010, each of the named defendants knowingly, wantonly, and/or intentionally provided or caused to be provided false and inflated AWP, WAC, and/or direct price information for their individual drugs to various nationally known drug industry reporting services. These reporting services in turn published the pricing information to various reimbursers, such as Louisiana Medicaid, who contracted to receive the information as a basis for providing reimbursement to pharmacy providers who dispense prescription drugs. According to the State, it relied on these artificially inflated AWP, WAC, and/or direct prices in determining the amount it must reimburse providers, causing the State to pay excessive amounts for the prescription drugs.

Additionally, the State alleged that the defendants created a "spread" for their drugs, which is the difference between the AWP and WAC and the actual price of the prescription drug, and marketed that spread to physicians and pharmacies so they would purchase defendants' prescription drugs. The State alleged that the defendants' actions caused the State to pay millions of dollars in excess Medicaid payments.

Therefore, the State claimed violations of the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1401, *et seq.*; the Medical Assistance Programs Integrity Law, La. R.S. 46:437.1, *et seq.*; and the Louisiana Antitrust Law, La. R.S. 51:121 *et seq.* The State also asserted claims for fraud, negligent misrepresentation, and unjust enrichment.

Thereafter, on June 27, 2012, the State and the AstraZeneca defendants entered into a settlement agreement and release, thereby resolving the AWP litigation.

**Instant Toprol-XL litigation**

On March 18, 2015, the State filed the instant suit against defendants, AstraZeneca AB, AstraZeneca LP, AstraZeneca Pharmaceuticals LP, and

4

Aktibolaget Hässle. The petition alleged violations of the Louisiana Antitrust Law and the LUTPA arising from the manufacture, marketing, and sale of Toprol-XL, an extended-release drug used for the treatment of angina, hypertension, and congestive heart failure. Specifically, the petition alleged that defendants prevented generic versions of Toprol-XL from entering the market by improperly manipulating patent filings and filing baseless patent infringement lawsuits to frustrate or delay market availability of generic equivalents, thus unlawfully monopolizing and/or attempting to monopolize the domestic market for Toprol-XL and its generic bioequivalents such as metoprolol succinate. The State alleged that this unlawful scheme and anticompetitive conduct unreasonably restrained and injured competition by protecting Toprol-XL from generic competition in the relevant market.

The State further alleged that as a result of defendants' conduct, it paid for Toprol-XL at prices significantly higher than what it would have paid if multiple competing and/or generic versions of Toprol-XL were on the market. Also, the State alleged that as a result of defendants' unlawful scheme and anticompetitive conduct, it had been deprived of the benefits of free and unrestricted competition by being denied the opportunity to choose between branded Toprol-XL and generic alternatives, which would have cost thirty to forty percent less than branded Toprol-XL. Instead, the State alleged it was forced to continue to pay supracompetitive prices for Toprol-XL, thereby causing it to sustain injury. Accordingly, the State sought restitution and treble damages, seeking to recover the amounts paid by the State for illegally obtained funds due to defendants' monopolistic actions (violation of La. R.S. 51:121, *et seq.*) and unfair and deceptive trade practices (violation of La. R.S. 51:1401, *et seq.*). The State also alleged claims for unjust enrichment.

5

On November 4, 2015, defendants filed exceptions raising the objections of no cause of action, no right of action, prescription, peremption, lack of subject matter jurisdiction, and vagueness or ambiguity. Following a hearing on defendants' exceptions, the trial court signed a judgment on March 18, 2016, sustaining the exceptions raising the objections of no cause of action and no right of action. The State appealed the trial court's judgment, and in State v. AstraZeneca AB, 2016-1073 (La. App. 1st Cir. 4/11/18), 249 So. 3d 38, this court reversed the trial court's judgment and overruled the exceptions. The Louisiana Supreme Court subsequently denied writs in State v. AstraZeneca AB, 2018-00766 (La. 9/21/18), 252 So. 3d 899 and 2018-0758 (La. 9/21/18), 252 So. 3d 904.

Thereafter, on November 8, 2018, the defendants filed an Answer and Affirmative Defenses, wherein they asserted, among other defenses, that the State had already been made whole with respect to the alleged damages due to the settlement between the AstraZeneca defendants and the State in the AWP litigation.

On November 21, 2018, the defendants filed a motion for summary judgment, asserting several bases for summary judgment, including that the State's claims against them, which defendants characterized as claims that defendants unlawfully overcharged the State for pharmaceutical drugs, were compromised pursuant to the settlement agreement in the AWP litigation, and that the State's claims are barred by *res judicata*. Pursuant to an agreement between the parties, the only issues for consideration at the hearing on defendants' motion for summary judgment were whether the AWP litigation and/or *res judicata* barred the State's claims in the instant case.

Following a hearing on April 15, 2019, the trial court signed a judgment, finding that there was no genuine issue of material fact as to whether *res judicata* applies or whether the settlement agreement in the AWP litigation compromised

6

the claims made in the instant matter. The judgment therefore granted defendants' motion for summary judgment and dismissed all of the State's claims against the defendants with prejudice. The State now appeals from the trial court's judgment.

## DISCUSSION

The general rule of *res judicata* in Louisiana is set forth in La. R.S. 13:4231, which provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Under La. R.S. 13:4231, a second action is precluded when all of the following are satisfied: (1) the judgment is valid and final; (2) the parties are the same; (3) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (4) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Pierrotti v. Johnson, 11-1317, p. 8 (La. App. 1st Cir. 3/19/12), 91 So. 3d 1056, 1063.

While the doctrine of *res judicata* is ordinarily premised on a final judgment on the merits, it also applies where there is a transaction or settlement of a disputed or compromised matter that has been entered into by the parties. Ortego v. State, Department of Transportation and Development, 96-1322, p. 6 (La. 2/25/97), 689

So. 2d 1358, 1363. Thus, compromises have the legal efficacy of the thing adjudged. Ortego, 96-1322 at p. 6, 689 So. 2d at 1363; see also La. C.C. art. 3080.

Louisiana Civil Code article 3071 defines a compromise as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." A party claiming res judicata based on a compromise must have been a party to the compromise, and the authority of the thing adjudged extends only to the matters the parties intended to settle. Ortego, 96-1322 at pp. 6-7, 689 So. 2d at 1363.

As a written contract, a compromise instrument is the law between the parties and must be interpreted according to the parties' intent. Ortego, 96-1322 at p. 7, 689 So. 2d at 1363. Interpretation of a compromise agreement is governed by the same general rules of construction applicable to contracts. Brown v. Drillers, Inc., 630 So. 2d 741, 748 (La. 1994). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Each provision in a contract must be interpreted in light of other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.

A motion for summary judgment can be granted based on a finding of res judicata when there is no genuine issue as to any material fact. Brown, 630 So. 2d at 747, n.7. In determining whether summary judgment is appropriate, appellate courts review the evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La. App. 1st Cir. 12/28/06), 951 So. 2d 307, 314, writ denied, 07-0905 (La. 6/15/07), 958 So. 2d 1199. A motion for summary judgment is properly granted if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.

C.C.P. art. 966(A)(3).    When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing there is no genuine issue as to material fact remains with the party bringing the motion.  See La. C.C.P. art. 966(D)(1); Sova v. Cove Homeowner's Association, Inc., 11-2220, p. 3 (La. App. 1st Cir. 9/7/12), 102 So. 3d 863, 866.

In the instant suit, the defendants assert that the State's claims are barred by *res judicata* due to the settlement agreement entered into between the State and defendants in the AWP litigation.  The AWP settlement provides, in relevant part:

* * *

2. This agreement is intended to cover all pharmaceutical products manufactured, distributed, marketed, co-marketed, co-promoted and/or sold by the Released Parties as defined herein, whether or not the drug was specifically named or referred to in the Litigation. These pharmaceutical products are referred to hereinafter as the "Covered Drugs."

3. *All*: (a) conduct alleged in the Litigation, including that Defendant allegedly engaged in false, misleading, willful, wanton, unfair, deceptive and unconscionable acts and practices in the pricing and marketing of prescription drug products; (b) that Defendant allegedly engaged in a conspiracy in an effort to increase its market share; and (c) *potential claims* of State concerning any conduct relating to any of the Released Parties (as defined below) *reporting, setting, publishing, or failure to object to the publication of another of [AWP, WAC,] and/or Direct Price ("DP"), or any marketing activity relating to any such prices, constitutes the "Covered Conduct"* that is addressed by this Agreement. The *Covered Conduct is expressly limited to*: (a) conduct which has occurred prior to the Effective Date of this Agreement; (b) conduct as expressly alleged by the State in this Litigation and the *potential claims referenced in the preceding sentence*, as though such conduct and potential claims had been alleged with respect to all of the Covered Drugs; and (c) claims concerning the State of Louisiana and its Medicaid Program.

* * *

6. ...[T]he State, on behalf of itself, and its officers, employees, attorneys, agents, agencies, departments ... political subdivisions and boards and commissions with any authority to initiate or maintain any claims released herein, does hereby fully and finally release Defendant, and each of its past and present parents, and its associated companies, which means any corporation, partnership, limited liability company or other entity or combination thereof that directly or indirectly owns or controls Defendant, is owned or controlled by Defendant or is under common ownership or control with Defendant ... ; as well as any subsidiaries, divisions, partners, current and former

directors, mangers, officers, employees, ... agents, shareholders, predecessors, divisions, executors, assigns, or legal representatives of each of the foregoing (collectively, "Released Parties") from any known or unknown civil, regulatory, administrative or monetary claim, action, suit or proceeding the State or any of its political subdivisions with any authority to initiate or maintain any claims released herein has or may have or could have asserted in the future under any source of law arising from or relating to the Covered Conduct.... *This Release is expressly limited to the Covered Conduct and shall only release the Released Parties with respect to the Covered Conduct...* The State shall not initiate or prosecute any civil or administrative actions, *qui tam* lawsuits, whistleblower lawsuits, claims, investigations, or any other type of proceeding against the Released Parties arising from or relating to the Covered Conduct. [Emphasis added.]

According to the clear and unambiguous language of the settlement agreement read as a whole, the parties to the agreement intended only to settle and release claims, known or unknown, for "covered conduct." The agreement specifically and narrowly defines covered conduct to include: *conduct alleged in the AWP litigation,* including unlawful acts and practices in the *pricing and marketing* of prescription drug products and engaging in a conspiracy to increase its market share, and potential claims concerning any conduct relating to the *reporting, setting, publishing, or failure to object to the publication of another of AWP, WAC, and/or Direct Price,* or *any marketing activity relating to any such prices.* The agreement further limits the covered conduct to conduct occurring before the effective date of the agreement, to potential claims referenced in the preceding sentence, and to claims concerning the State and its Medicaid Program.

Accordingly, the conduct at issue in the AWP settlement, as specifically described therein, was conduct relating to the unlawful price setting, and marketing of those prices, of defendants' prescription drug products. This interpretation conforms with not only the plain language of the settlement agreement but also with the claims asserted in the AWP litigation. The current claims of the State, however, do not arise from this conduct. There is no complaint in the instant petition regarding the defendants' pricing of Toprol-XL, or specifically the AWP,

WAC, or direct price thereof, nor does the State complain about the marketing of those prices. Rather, the State's claims, as detailed in its petition for damages, arise from defendants' unlawful manipulation of patent applications and patent litigation to delay and/or prevent generic versions of Toprol-XL from entering the market. The State asserts that the actions of the defendants deprived the State of free and unrestrained competition by denying the State the opportunity to choose between branded Toprol-XL and lower-priced generic alternatives, which would have cost thirty to forty percent less than the branded Toprol-XL. The State alleges that had generic competitors been able to enter the market and compete with defendants, the State would have paid for lower-priced generics in place of the higher-priced brand name drug. Accordingly, the State asserts that the actions of the defendants caused the State to pay more for metoprolol succinate products than it otherwise would have paid had generic drugs been permitted to enter the market.

Therefore, we find, based on the language of the settlement agreement, that the State's current claims in the Toprol-XL litigation were not intended to be settled in the AWP settlement agreement, and that the conduct at issue in the instant litigation does not arise out of the covered conduct at issue in that agreement. See Chauvin v. Exxon Mobil Corporation, 14-0808, pp. 13-14 (La. 12/9/14), 158 So. 3d 761, 770 (finding that the transaction or occurrence for *res judicata* purposes was defendant's conduct and actions). As such, the trial court erred in finding that *res judicata* applies[4] and in granting summary judgment in

---

[4] We also note that another requirement of *res judicata* is that the actions involve the same parties. Furthermore, with regard to compromise agreements, the party claiming *res judicata* based on a compromise must have been a party to the compromise. In the instant case, while two of the defendants in the current suit were also parties to the AWP settlement agreement, two of the defendants were not. Defendants assert that these two additional defendants are successors or assigns of the defendants who were parties to the AWP settlement, and therefore, they are the same parties for purposes of *res judicata*. However, there is no evidence or allegations supporting this assertion in the record.

favor of defendants, dismissing the State's claims against them with prejudice.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and remand this matter to the trial court for further proceedings. All costs of this appeal are assessed to defendants, AstraZeneca AB, AstraZeneca LP, AstraZeneca Pharmaceuticals LP, and Aktibolaget Hässle.

**REVERSED AND REMANDED.**